Alexander SLATER, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 129, Docket 22531.

United States Court of Appeals Second Circuit.

Argued April 5, 1955.

Decided May 11, 1955.

Turnbull & Bergh, New York City, Louis O. Bergh, New York City, of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Joseph F. Goetten, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN and HINCKS, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves income tax deficiencies for the years 1941 and 1943. The taxpayer is a lawyer. His income tax returns were on the cash basis. In 1929 he was retained to prosecute litigation on a contingent fee plus expenses. The litigation was settled in 1941 and at that time he was paid $90,550, and an additional $90,250 was placed in escrow and was paid him in 1942 upon delivery of releases executed by his clients. In a memorandum opinion not officially reported, the Tax Court held that the sum paid him in 1941 did not constitute at least 75% of his compensation for the services and, consequently, that section 107 of the Internal Revenue Code, as amended, was not applicable in computing the tax attributable to that compensation.[1]

The appeal raises solely a question of fact, namely, whether the taxpayer did or did not receive 75% of his contingent fee in 1941. This turns on the legal effect to be accorded to cablegrams exchanged between the lawyer and his clients relating to settlement of the litigation. An appellate court is as competent to decide such an issue as is the trial court.

In September 1941 the taxpayer received an offer of settlement and cabled his clients, Gold Coast Farmers' Association of British West Africa. By cablegram he informed his clients that he had negotiated a settlement for $180,500, that their "share after deducting my fee and expenses is twenty thousand pounds", asked for authority to effectuate the settlement, and concluded: "Then your share will be immediately deposited either bank pending delivery your releases. Mailing statement my expenses." The clients' reply requested him to endeavor to obtain a better settlement offer and instructed him to "effectuate final settlement and deposit total proceeds Standard Bank New York pending receipt statement your expenses". To this cable the taxpayer replied on September 23rd:

"Absolutely impossible obtain any increased offer or to permit withholding my fees and expenses Cable immediately authorization through bank as previously requested Net proceeds eighty thousand eight hundred dollars will be deposited standard bank your credit subject receipt releases My charges being fortythree onethird percent plus expenses twentyone thousand five hundred dollars My actual expenses considerably greater"

By cable of October 4, 1941, to the Bank of British West Africa the taxpayer again made plain that $80,800 would be deposited to the credit of his clients to

---

1. Section 107 of the Internal Revenue Code of 1939 as amended by sec. 139 of the Revenue Act of 1942, 26 U.S.C.A. § 107, provides:

"(a) Personal Services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

* * * * * *

"(b) The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1940, but, with respect to a taxable year beginning after December 31, 1940, and not beginning after December 31, 1941, the period specified in such subsection shall be sixty months in lieu of thirty-six months, and the percentage specified in such subsection shall be 75 per centum in lieu of 80 per centum."

await their releases and the balance would be payable to him for fees and expenses. Authority to "settle in terms your cablegrams and transmit Farmers share" was received on October 16th.

In settling the case for $180,500 the taxpayer earned a fee of 43⅓% or $78,-216.67. His expenses, to which his clients had agreed, were $21,500. On November 7, 1941 he received $90,250, plus an extra payment of $300 for delay in settlement, and cash and securities to the value of $90,250 were placed in escrow for delivery to him upon surrender of releases from his clients, which occurred in June 1942. Assuming that the taxpayer was to be reimbursed for his expenses before he received his fee, the balance remaining from the $90,550 paid him on November 7th is $71,050. This is much more than 75% of his total fee. We think it perfectly clear from the interchange of cables that his clients had authorized him to take out his fee and disbursements before the releases arrived and that only the balance of $80,800 was to be deposited in escrow to await the releases. However, instead of keeping all of the first payment of $90,550, Mr. Slater forthwith remitted to his clients $40,703, equivalent at the exchange rate of $4.0703 to £10,000. It was this payment which caused the Tax Court to rule that the taxpayer had not carried the burden of proving that 75% of his fee was received by him in 1941. We disagree. Since the cablegrams made plain that he might take his fee and expenses before his clients were to get their share of the settlement, the money he received in 1941 was his own, and it is irrelevant that he chose to send part of it to his clients.[2] He testified that Mr. Rosenberg, an attorney for the defendants, suggested that if he should send some part of the cash payment to his clients it would help to expedite getting in their releases and would promote good will on their part, and that this was his purpose in sending it. In this he was corroborated by the testimony of Mr. Rosen-

berg and Mr. Bobbe, an attorney associated with Mr. Slater. In his check book Mr. Slater noted the payment as "advanced against escrow money". In 1942 when the escrow was terminated, he authorized the bank to remit $40,400 to his clients and retained the remaining $40,-000 to make good his prior "advance". Further confirmation of the fact that the 1941 remittance was a voluntary use of money which he was entitled to keep as compensation for his services is found in the wording of the settlement agreement which provided for payment of the non-escrowed money to "Alexander Slater" and of the escrowed money to "Alexander Slater, Esq. on behalf of the parties of the first part", namely his clients and himself.

On the undisputed facts we think the Tax Court's ruling that the taxpayer had not proved that 75% of his compensation was received in 1941 is clearly erroneous. Accordingly the decision is reversed and the cause remanded.

---

2. See Leicht v. Commissioner of Internal Revenue, 8 Cir., 137 F.2d 433, 435, and authorities there cited.